## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JERRY DAVIS,** : | |
|     **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 21-CV-5035** |
| : | |
| **CHESTER CROZER HOSPITAL,** *et al*. : | |
|     **Defendants.** : | |

## MEMORANDUM

**RUFE, J.**                                                                                               **APRIL 6, 2022**

Before the Court is the *pro se* Amended Complaint of Plaintiff Jerry Davis, a pretrial detainee currently confined at George W. Hill Correctional Facility ("GWHCF"), filed pursuant to 42 U.S.C. § 1983.  (Am. Compl. [Doc. No. 10].)  For the following reasons, the Court will dismiss Davis's Amended Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).  Davis will be granted leave to file a second amended complaint as set forth more fully below.

**I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

Davis's original Complaint alleged violations of his civil rights based on events that occurred while he received treatment at Crozer-Chester Medical Center and also while housed at GWHCF.[2]  (Compl. [Doc. No. 2].)  In a December 15, 2021 Memorandum and Order, the Court

---

[1] The allegations set forth in this Memorandum are taken from Davis's Amended Complaint and the public dockets, of which the Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] It appears from the state court dockets that Davis was in custody in connection with various burglary and theft-related charges at the time that he was treated at Crozer-Chester Medical Center and that these charges remain pending.  *See Commonwealth v. Davis*, CP-51-CR-0001687-2020 (C.P. Philadelphia); *Commonwealth v. Davis*, CP-51-CR-0001536-2020 (C.P. Philadelphia).  The public dockets also reveal that Davis has not been convicted of the charges stemming from the Crozer-Chester Medical Center incident.  *See Commonwealth v. Davis*, CP-23-CR-0003351-2020 (C.P. Delaware) (trial scheduled to commence the week of March 21, 2022).

granted Davis leave to proceed *in forma pauperis* and dismissed his Complaint upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B). (*See* Mem. [Doc. No. 6]; Dec. 15, 2021 Order [Doc. No. 7].) The Court first dismissed with prejudice Davis's claims against Defendants Crozer-Chester Medical Center and GWHCF. (Mem. [Doc. No. 6] at 4–5.) The claims against Defendants Delaware County, the Chester Police Department, Norristown State Hospital, and The GEO Group, Inc. were dismissed without prejudice for failure to state a claim. (*Id.* at 6–8.) Additionally, Davis's malicious prosecution claims were dismissed without prejudice to Davis filing a new civil action in the event the charges filed against him terminate in his favor. (*Id.* at 8–9.) The Court also determined that the claims based on the use of excessive force and the other conditions of confinement at GWHCF were vague and conclusory and fell short of providing a sufficient factual basis to state plausible claims. (*Id.* at 9–11.) Davis was granted leave to file an amended complaint. (*See* Mem. [Doc. No. 6]; Dec. 15, 2021 Order [Doc. No. 7].)[3]

Davis did not file an amended complaint within the thirty-day time frame imposed by the Court. Instead, Davis filed a letter dated December 20, 2021, in which he stated his desire to appeal this Court's decision. (Doc. No. 8.) Consequently, on February 9, 2022, the Court issued an Order construing Davis's December 20, 2021 letter as a Notice to Stand on Complaint and closed the case. (Doc. No. 9.) On February 11, 2022, however, Davis's Amended Complaint was entered on the docket. (*See* Am. Compl. [Doc. No. 10].) By Order dated February 14, 2022, the Court vacated the dismissal Order and re-opened this matter so that the Amended Complaint could be screened under the provisions of 28 U.S.C. § 1915. (Feb. 14, 2022 Order [Doc. No. 11].)

---

[3] The Court also denied Davis's motion to amend the Complaint to add a claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971) as there were no allegations that Davis had been in federal custody. (Dec. 15, 2021 Order [Doc. No. 7].)

The Amended Complaint names as Defendants Delaware County, The GEO Group, Inc., and Norristown State Hospital. (Am. Compl. [Doc. No. 10].)[4] Davis again alleges that he was arrested without probable cause at Crozer-Chester Medical Center in February 2020 and brought to GWHCF,[5] where he "underwent months of eating jail food and being a pretrial inmate, subject to the unusual and cruel punishment" of GWHCF. (*See* Am. Compl. [Doc. No. 10] at 4.) According to Davis, because he refused to accept a plea agreement, the state court judge ordered an involuntary psychiatric evaluation and he was transferred to Norristown State Hospital in February 2021. (*Id.*) He contends that staff at Norristown State Hospital assaulted him and forced him to take medication. (*Id.*) Davis alleges that he had a "gash" on his forehead from "some alleged employee and was made to stay in the room until [his] blood dried up and [his] body proceeded to try to heal itself." (*Id.*) He avers that he was returned to GWHCF on May 4, 2021. (*Id.*)

Davis further claims that it is "GEO policy that ASA or PSA are not allowed to use the phone or get recreation" in violation of his constitutional rights. (*Id.* at 5.) He also contends that it is "GEO policy that all meals are to be eaten outside of the cell which was never followed in [his] case" and that his rights to a speedy trial have been violated. (*Id.*) According to Davis, "Delaware County was aware of this because they enforce the laws but did not follow protocol" and instead have subjected him to cruel and unusual punishment. (*Id.*) He further claims that

---

[4] The Court notes that an amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

[5] It appears from the publicly available docket that Davis's confinement at GWHCF began on March 2, 2020. *See Commonwealth v. Davis*, CP-23-CR-0003351-2020 (C.P. Delaware).

Delaware County and the GEO Group, Inc., were "aware of the provisions made at GWHCF I'm at least relatively certain and did nothing to change its policy, discipline its employees nor repress or curb these abuses inflicted" during his time at GWHCF. (*Id.*) He further alleges Delaware County and the GEO Group, Inc., "were aware of the illegal actions and oppressive issues going on … and are still taking place." (*Id.*) He acknowledges that he does not know the names of the individuals who are alleged to have violated his rights. (*Id.*)

While housed at GWHCF, Davis claims that he is "under 24 hour lockdown in a cell approximately since the end of August until present January." (*Id.* at 6.) He alleges that he is "not being permitted showers recreation or telephone calls for five months straight [and] counting" and that "the jail is trashing" his mail. (*Id.*) Davis also claims that on November 16, 2021, "a CO opens my slot and I try to tell him I haven't had a shower in since I can't remember can I have one he and his partner now this is round the second meal of the day grab and twist my arm out of socket trying to get me to put my arm back inside." (*Id.*) He further claims that on December 23, 2021, "a CO slides a tray under my door where poop and urine has been . . . and I slide it back out those are like complete no-nos and they don't appear to be aware of that." (*Id.*) Additionally, Davis contends that other inmates have thrown excrement on him in the presence of Corrections Officers. (*Id.* at 4.) Davis asserts that he has suffered psychological and physical trauma and seeks monetary damages. (*Id.* at 6.)

## II.     STANDARD OF REVIEW

Since the Court granted Davis leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Section 1915 also requires the dismissal of claims for monetary relief brought against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *Rauso v. Giambrone*, 782 F. App'x 99, 101 (3d Cir. 2019) (*per curiam*) (holding that § 1915(e)(2)(B)(iii) "explicitly states that a court shall dismiss a case 'at any time' where the action seeks monetary relief against a defendant who is immune from such relief").

As Davis is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### III.   DISCUSSION

To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). It is difficult to determine the claims in Davis's Amended Complaint because he once again articulates his claims in a generalized, conclusory manner. (*See generally* Am. Compl. [Doc. No. 10].) That is, Davis does not specify what happened, when it happened, and who was involved in a given set of events.

Although Davis alleges violations of his First, Fourth, Fifth, Sixth, Eighth, Ninth, Twelfth, Thirteenth, Fourteenth, Fifteenth, and Sixteenth Amendment rights, (*see id.* at 3), liberally construing Davis's Amended Complaint as this Court must do, the Court understands the Amended Complaint as attempting to present claims for malicious prosecution, excessive force, interference with mail, and regarding the conditions of his confinement.[6] Despite that liberal construction, Davis again has not alleged a plausible basis for a claim against any Defendant.

      A.      **Claims Against Delaware County and The GEO Group, Inc.**

The claims Davis seeks to pursue against Delaware County and The GEO Group, Inc., must be dismissed pursuant to § 1915(e)(2)(B)(ii). To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir.

---

[6] The other constitutional provisions to which Davis refers do not give rise to any plausible basis for liability here.

1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

As a private corporation under contract to provide services at GWHCF, The GEO Group is a state actor and is subject to § 1983 liability. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003) (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of § 1983); *French v. GEO Grp., Inc.*, No. 18-4312, 2018 WL 4929859, at *2 (E.D. Pa. Oct. 10, 2018) ("The GEO Group acts under the color of state law by providing services for the George W. Hill Correctional Facility."); *Regan v. Upper Darby Twp.*, 2009 WL 650384, at *3 n.5 (E.D. Pa. Mar. 11, 2009) ("For purposes of Plaintiff's § 1983 claims, Defendant GEO Group, a private company, was acting under the color of state law since it provided daily functional services for the Delaware County Prison."). Thus, The GEO Group, Inc. may be liable under § 1983 if its policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *McTernan*, 564 F.3d at 658. It may also be liable for failure to supervise, train, or discipline its employees. *See Forrest*, 930 F.3d at 106.

Davis seeks to present claims against Delaware County and The GEO Group, Inc., but he sets forth only vague and conclusory allegations against these Defendants.  (*See* Am. Compl. [Doc. No. 10] at 5.)  Davis alleges that it is "GEO policy that ASA or PSA are not allowed to use the phone or get recreation which is a violation of federal law any my constitutional rights." (*Id.*)  He also claims that it is "GEO policy that all meals are to be eaten outside of the cell which was never followed in my case." (*Id.*)  Additionally, Davis asserts that he has been subjected to a "long oppressive incarceration" and that Delaware County "was aware of this because they enforce the laws but did not follow protocol" such that he has been subjected to "cruel and unusual punishments." (*Id.*)  Davis also contends that he is "relatively certain" that Delaware County and The GEO Group, Inc. were aware of the conditions under which he is held at GWHCF, but that they "did nothing to change its policy, discipline its employees nor repress or curb these abuses inflicted during my incarceration." (*Id.*)

Nothing in the Amended Complaint plausibly suggests that the claimed constitutional violations stemmed from a policy or custom of either Delaware County or The GEO Group, Inc.  Rather, Davis's Amended Complaint consists entirely of conclusory allegations that his constitutional rights were violated.  He also fails to allege that Delaware County or The GEO Group, Inc. had actual knowledge of prior similar conduct or failed to prevent the repetition of such conduct, and that this failure led to his injury.  Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the Delaware County or The GEO Group, Inc.  *See Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).  Thus, Davis's claims against Delaware County and The GEO Group,

8

Inc., will be dismissed for failure to state a claim. However, since the Court cannot say at this time that Davis can never assert a plausible claim against Delaware County or The GEO Group, Inc., the dismissal will be without prejudice and Davis will be afforded one more opportunity to file a second amended complaint if he is capable of curing the defects the Court has identified.

### B.   Claims Against Norristown State Hospital

Davis includes Norristown State Hospital as a Defendant in the caption of his Amended Complaint and in the list of named Defendants. (Am. Compl. [Doc. No. 10] at 1, 3.) Davis appears to allege that he was confined at Norristown State Hospital in February 2021, when "the Judge sees I won't take the deal he then signs me up for an involuntary psyche eval. at Norristown State Hospital." (*Id.* at 4.) Davis contends that "the staff at Norristown assaulted me, forced me to take medication I was jumped by multiple staffs I had a gash in my forehead from some alleged employee and was made to stay in the room until my blood dried up and my body proceeded to try to heal itself." (*Id.*)

Nonetheless, the claims for money damages Davis seeks to assert against Norristown State Hospital may not proceed. Absent consent by the Commonwealth, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, state entities and officials sued in their official capacities are immune from suits filed in federal court. *See Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 118 (3d Cir. 2013) (*per curiam*); 42 Pa. Cons. Stat. § 8521–22. "Because [Norristown State Hospital] is a state institution within the Department of [Human Services], [Norristown State Hospital] and its employees are an arm of

the state entitled to Eleventh Amendment immunity in so far as they are sued in their official capacities." *Matthews*, 528 F. App'x at 118–19; *see Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity."); *see also Hafer v. Melo*, 502 U.S. 21, 23 (1991) (holding that Eleventh Amendment does not bar suits against state officials sued in their individual capacities under § 1983). Thus, Davis's claims against Norristown State Hospital under § 1983 will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

### C. Claims for Malicious Prosecution

Davis again alleges that he has been falsely charged with a crime and maliciously prosecuted. (*See* Am. Compl. [Doc. No. 10] at 4–6.)

> To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009).

According to the state court docket, the charges against Davis were dismissed with prejudice on March 22, 2022. *See Commonwealth v. Davis*, CP-23-CR-0003351-2020 (C.P. Delaware). However, Plaintiff has asserted only conclusory facts as to the circumstances of his arrest and prosecution, and the Court will dismiss this claim without prejudice and with leave to amend.[7]

---

[7] Similarly, to the extent Davis raises a false arrest claim and, assuming *arguendo* that there is a basis for such a claim, he has not adequately tied that allegation to any named Defendant or articulated facts that would support a plausible inference that probable cause was lacking for his arrest. *See Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent plaintiff was asserting claims for false arrest "[plaintiff] needed to point to facts suggesting that Defendant Thompson lacked probable cause to believe he had committed the offense for which he was arrested").

10

### D. Additional Claims Based on Conditions at GWHCF and Norristown State Hospital

Davis's Amended Complaint contains additional allegations that at times appear attributable to individuals who are not named as Defendants in this case. Although Davis did not name any individual defendants, it is worth noting that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 825 F.2d at 1207. Many of Davis's allegations with regard to these potential claims are vague and conclusory. The Court addresses his primary allegations below.

#### 1. Claims Based on the Use of Excessive Force

Because Davis was a pretrial detainee during the relevant events, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted); *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To state a due process violation based on excessive force, a detainee must allege facts to plausibly suggest that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97.

11

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A non-exhaustive list of factors relevant to a determination of excessive force, include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

Davis alleges that he was "assaulted" by staff at Norristown State Hospital, among other things, but this is a legal conclusion that he does not develop. Davis also claims that on November 16, 2021, "a CO opens my slot and I try to tell him I haven't had a shower in since I can't remember can I have one he and his partner now this is round the second meal of the day grab and twist my arm out of socket trying to get me to put my arm back inside." (Am. Compl. [Doc. No. 10] at 6.) However, he has failed to tie this allegation to any of the named Defendants as a basis for their liability. Additionally, to plausibly allege a claim against an individual, Davis must identify the individual or individuals alleged to have asserted force, and allege facts describing the force used, the circumstances under which it was used, and the injuries he suffered as a result. The allegations are insufficient to survive screening and Davis's excessive force claims will be dismissed without prejudice for failure to state a claim.

### 2. Claims Based on Conditions of Confinement

With respect to Davis's conditions of confinement claims, the Amended Complaint still does not allege a plausible claim for relief. Davis alleges, *inter alia*, that "since the end of August until present January" he was locked in his cell for twenty-four hours a day and was refused showers, telephone calls, and recreation. (*See* Am. Compl. [Doc. No. 10] at 4, 6.) Pretrial detainees in federal custody are protected from "punishment" by the Due Process Clause

of the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538–39, 539 n.20). In general, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Seiter*, 501 U.S. at 298–99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Although these facts may provide the basis for a constitutional claim, Davis has not adequately tied his allegations about the conditions at GWHCF to any of the named Defendants, nor has he named as Defendants individuals who were personally responsible for the alleged harm he suffered as a result of the conditions he describes. Thus, Davis's Amended Complaint

13

also fails to state a claim with respect to the conditions of his confinement.  Accordingly, Davis's claims based on the conditions of his confinement will be dismissed without prejudice.[8]

### 3.  Claim Based on Interference with Mail

Davis alleges that he has "put mail out and have not received correspondence.  I think the jail is trashing my mail."  (Am. Compl. [Doc. No. 10] at 6.)  Prisoners have protected First Amendment interests in both sending and receiving mail.  *See Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Turner v. Safley*, 482 U.S. 78 (1987).  However, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration."  *Thornburgh*, 490 U.S. at 407 (quoting *Turner*, 482 U.S. at 85).

Regarding legal mail, a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech."  *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated in part by Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997); *see also Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech.").  A prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy."  *See, e.g., Jones*, 461 F.3d at 359 (distinguishing between "a pattern and practice" and an "explicit policy").  "[P]risoners need not allege or prove any 'actual injury' beyond direct injury to their First Amendment right to use the mails."  *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir.

---

[8] Davis again complains generally about the unsanitary conditions at GWHCF.  The Court recognizes that unsanitary conditions can support a cognizable § 1983 conditions of confinement claim.  *See, e.g., Conway v. Cnty. of Camden*, No. 16-9550, 2017 WL 3783263, at *2–3 (D.N.J. Aug. 31, 2017) (finding plaintiff sufficiently pled a plausible basis for a claim that he experienced unconstitutionally punitive conditions as a detainee where he alleged, *inter alia*, that he was housed in a two-person cell with three other people and required to sleep on the floor next to the toilet with only a thin mattress, facility had only one set of fingernail clippers for all inmates on the unit and plaintiff sustained a skin infection, mold caused plaintiff to sustain respiratory problems, there was a lack of hot water in the cells, plaintiff sustained insect bites, and was housed with inmates infected with MRSA).  Here, however, Davis's conclusory statements regarding the lack of cleanliness at GWHCF do not sufficiently state a plausible claim.

2006). However, courts have found that mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (*per curiam*) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation.").

It is unclear from the Amended Complaint whether Davis is referring to his legal mail, or other personal correspondence. To the extent Davis alleges interference with his legal mail, his Amended Complaint fails to set forth specific factual averments describing how any named Defendant was personally involved in the interference. He also makes no allegation that the interference was part of a pattern and practice. Indeed, this allegation appears to be based on speculation. Without at least a modicum of factual specificity on these points, the Court must conclude that Davis has failed to state a plausible claim of interference with legal mail under the First Amendment.

To the extent Davis seeks to pursue a claim for deprivation of his property without due process of law, such claim is not plausible. A prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (*per curiam*) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'") (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides

adequate postdeprivation remedy to satisfy due process); *see also Shareef v. Moore*, 844 F. App'x 487, 488 (3d Cir. 2021) (*per curiam*) (no due process violation where inmate had access to adequate post-deprivation remedy to address confiscation and destruction of property and legal papers), *cert. denied*, 142 S. Ct. 146 (2021). Accordingly, any claims based on Davis's mail will be dismissed without prejudice as not plausible.

## IV. CONCLUSION

As set forth more fully above, Davis's § 1983 claims against Norristown State Hospital are dismissed with prejudice because he cannot cure the defects in these claims and amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile."). Davis's claims against Delaware County and The GEO Group, Inc., are dismissed without prejudice for failure to state a claim, as is Davis's malicious prosecution claim based on the criminal charges related to the incident at Crozer-Chester Medical Center.

Because Davis may be able to state a plausible claim, he will be granted a further opportunity to amend his claims. Cognizant of Davis's *pro se* status, the Court will grant Davis an opportunity to "flesh out [his] allegations by . . . explaining in the amended complaint the 'who, what, where, when and why' of [his] claim." *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019). Any second amended complaint should clearly describe the factual basis for Davis's claims against the relevant defendant and how the defendant was involved in the alleged denial of his Constitutional rights. If Davis fails to file a second amended complaint within the time specified in the Court's Order, this matter will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). An order will be entered.